UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

September 11, 2018

LETTER TO COUNSEL

RE: *Natalie May Hamilton v. Commissioner, Social Security Administration*;[1]
Civil No. SAG-17-2610

Dear Counsel:

On September 8, 2017, Plaintiff Natalie May Hamilton petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claim for Disability Insurance Benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment, and Ms. Hamilton's reply. (ECF Nos. 16, 17, 18). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the judgment of the SSA, and remand the case to the SSA for further analysis pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Ms. Hamilton filed her claim for benefits in September, 2013, alleging a disability onset date of June 13, 2013. (Tr. 208-09). Her claim was denied initially and on reconsideration. (Tr. 120-30, 132-43). A hearing was held on March 3, 2016, before an Administrative Law Judge ("ALJ"). (Tr. 57-119). Following the hearing, the ALJ determined that Ms. Hamilton was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 36-52). The Appeals Council ("AC") denied Ms. Hamilton's request for further review, (Tr. 16-21), so the ALJ's decision constitutes the final, reviewable decision of the SSA.

The ALJ found that Ms. Hamilton suffered from the severe impairments of "[m]ajor depressive disorder, recurrent and moderate; anxiety disorders; and borderline intellectual functioning." (Tr. 39). Despite these impairments, the ALJ determined that Ms. Hamilton would retain the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can perform work that involves understanding, remembering, and carrying out very short, simple instructions; can

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

> interact appropriately with supervisors, co-workers, or peers frequently; and can respond appropriately to changes in the work setting frequently.

(Tr. 45). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Hamilton could perform jobs existing in significant numbers in the national economy. (Tr. 50-51). Therefore, the ALJ concluded that she was not disabled. (Tr. 51-52).

Ms. Hamilton makes two primary arguments on appeal: (1) that the ALJ's evaluation of Listing 12.05 (Intellectual Disorder) was defective; and (2) that the ALJ's RFC assessment was flawed and runs afoul of the Fourth Circuit's decision in *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015). I agree, and I therefore remand the case for further analysis.

First, in *Mascio*, the United States Court of Appeals for the Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. *Id.* At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (2016). Listings 12.00 *et seq.* pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. The relevant listings therein consist of: (1) a brief statement describing a subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id.* § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id.*

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2) (2016). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. *Id.* § 404.1520a(c)(4). To satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02 (2016). Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function." *Id.* § 12.00(C).

The functional area of "[c]oncentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* § 12.00(C)(3). Social Security regulations do not define marked limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id.* The regulations, however, offer little guidance on the meaning of "moderate" limitations.

The Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE—and the corresponding RFC assessment—did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id*. at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id*. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id*.

In the instant case, the ALJ found that Ms. Hamilton had moderate difficulties maintaining concentration, persistence, or pace. (Tr. 43). The ALJ's analysis stated:

> The claimant testified that her depression has caused short-term memory problems and an inability to finish tasks. She also testified to having learning issues. She stated she was in "resource classes" at school, which allowed time to do homework with help from teachers, and that she failed ninth grade three times and was, consequently, forced to leave the public school system. The claimant's treatment records indicate GAF scores from 50 to 55, suggesting moderate limitations in occupational functioning. Although Ms. Woods, the claimant's therapist at Sheppard Pratt Way Station, indicated marked limitations in understanding even short and simple instructions, the claimant's consultative examination report with Dr. Burlingame showed an ability to follow 3-step instructions and simple commands independently. The claimant's cognitive ability was noted to have moderate (bordering on marked) limitations based on the interrogatory answers of consultative examiner Dr. Goff. However, Dr. Goff specifically indicate [sic] that the claimant had moderate limitations in understanding and carrying out complex instructions but only mild limitations in simple ones. The claimant's cognitive testing showed some deficits—Full Scale IQ and Verbal scores of 70; however, her reading was on [an] 8th grade level, spelling on an 11th grade level, and math at a 5.7 grade level. In the claimant's mental status examination with Dr. Burlingame, the claimant had adequate concentration; she could spell a word forwards and backwards and did serial sevens with only one error. The claimant's memory test was 3/3; she could follow a simple command, repeat a complex phrase, and copy a geometric

      picture.[2] Although her cognitive processing and ability to handle work stress were regarded as poor, her task persistence and concentration were noted to be adequate. Considering the evidence of record, the undersigned finds that the claimant's limitations in concentration, persistence, and pace are moderate, consistent with the State agency psychiatric consultant at both levels.

*Id.* (internal citations omitted).

      None of the three limitations included in the RFC assessment address Ms. Hamilton's ability to work at a particular pace for a full eight-hour workday. The restriction to "understanding, remembering, and carrying out very short, simple instructions" addresses the inability to perform complex tasks, and the restriction to only frequent "interact[ion] with supervisors, co-workers, or peers" addresses social functioning limitations. (Tr. 45). The third restriction, to only frequent changes in the work setting, *id.*, may partially address concentration, persistence, or pace, but does not address Ms. Hamilton's ability to sustain work at a consistent pace. The ALJ's discussion of Ms. Hamilton's impairments does not provide any additional explanation for the conclusion that she would be able to perform work tasks throughout an eight-hour workday. In fact, two of the medical opinions afforded "great weight" by the ALJ expressed some concern about Ms. Hamilton's ability to sustain work at a particular pace. *See, e.g.*, (Tr. 313-14) (Dr. Burlingame's assessment finding "low" processing speed and noting that, "[t]he patient's ability to tolerate work-related stresses and demands was deemed poor for a 40 hour work week in a normal setting."); (Tr. 441) (Dr. Goff's opinion that Ms. Hamilton had marked restriction in her ability to "respond appropriately to usual work situations and to changes in a routine work setting" and note that "there may be some [illegible] slowing," citing to Dr. Burlingame's report). In light of the inadequate evidentiary support for the conclusion that Ms. Hamilton could sustain work over an eight-hour workday without any restrictions relating to her pace of work, I must remand the case to the SSA for further analysis consistent with the Fourth Circuit's mandate in *Mascio*.

      Ms. Hamilton's argument regarding Listing 12.05 is also meritorious, because the ALJ did not provide an adequate explanation of the conclusion that there was a lack of "adequate support in the evidence of record of the deficits in adaptive functioning before age 21."[3] (Tr. 45). The ALJ relied, in part, on the fact that there was "no cognitive testing done before age 21 to show that her cognitive limitations existed before the age of attainment." *Id.* Although it is not clear what the ALJ meant by "cognitive testing," to the extent it referred to IQ testing, the Fourth Circuit has determined that it is appropriate to assume, in the absence of any injury or medical condition to explain a change in intellectual functioning, that a claimant's IQ scores remain constant over time. *Branham v. Heckler,* 775 F.2d 1271, 1274 (4th Cir. 1985). The ALJ also relied on Dr. Goff's opinion that Ms. Hamilton's impairments did not meet listing 12.05, (Tr. 45), but Dr. Goff, unfortunately, made that conclusory assertion without explaining its basis. *See*

---

[2] The ALJ was incorrect on this point, as Dr. Burlingame actually reported that Ms. Hamilton "could not copy overlapping pentagons correctly." (Tr. 313).
[3] The regulations require the onset of the impairment before age 22, not age 21 as the ALJ suggests. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05 (2016).

(Tr. 445) ("Her borderline intellectual functioning is also a factor but does not meet 12.05."). It is not evident, then, whether Dr. Goff also believed that Ms. Hamilton had not exhibited deficits in adaptive functioning before age 22, or made his assessment for some other reason. In light of the evidence that Ms. Hamilton failed the ninth grade more than once and was not permitted to return to the public school system, remand is warranted to obtain an adequate explanation of the conclusion that she suffered no deficits in adaptive functioning before age 22. On remand, the ALJ should provide a full explanation, consistent with Fourth Circuit law, of the evidentiary basis supporting the analysis of Listing 12.05.

For the reasons set forth above, Plaintiff's Motion for Summary Judgment (ECF No. 16) is DENIED, and Defendant's Motion for Summary Judgment (ECF No. 17) is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge